IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROSA ESTELLA OLVERA JIMENEZ | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 1:12-CV-00373-LY-AWA |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT DAVIS'S OBJECTIONS TO REPORT AND
RECOMMENDATION WITH BRIEF IN SUPPORT**

Petitioner, Rosa Estella Olvera Jimenez, was found guilty of felony murder and injury to a child and was sentenced to seventy-five years' imprisonment for murder and ninety-nine years' for injury to a child. The Honorable Andrew W. Austin issued a Report and Recommendation (R&R) on September 10, 2018. *See* ECF NO. 39. Judge Austin is recommending that Jimenez be granted relief on her claims that her attorney was ineffective in failing to preserve a claim under *Ake Oklahoma*, 470 U.S. 68 (1985), and that the trial court erred in failing to grant additional expert funding under *Ake*. The objections are due on Monday, October 8, 2018. The Director objects as follows.

A.   **The Decision of the Court of Criminal Appeals Finding that Jimenez's Attorney Was Not Ineffective in Failing to Preserve Her *Ake* Claim Was Not Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding.**

The Magistrate wants to grant relief on Jimenez's *Strickland* claim under 28 U.S.C. § 2254(d)(2) (West 2018). Section A.1. of the R&R appears to address problems the Magistrate saw in the state-court record. He found that the "factual findings" of the Court of Criminal Appeals (CCA) in denying Jimenez's claim that her trial attorney, Leonard Martinez, was ineffective in failing to preserve a request for expert funding under *Ake* "were an unreasonable determination of the facts in light of the record and an unreasonable application of *Strickland's* prejudice test." *See* R&R 23-24, 31 (citing *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) citing 28 U.S.C. § 2254(d)(2) (West 2018)). The Magistrate believes he is "not bound to defer to these findings." *See id.* at 31 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 390 (1986) and *Draughon v. Dretke*, 427 F.3d 286, 296-297 (5th Cir. 2005)).

In section A.2., the Magistrate addressed whether Martinez was ineffective in failing to obtain funding for an expert under *Ake* and to preserve the *Ake* claim. *See id.* at 31-32. The Magistrate assumed that the CCA had found that Martinez's performance was deficient because it had found the stand-alone claim that the trial court erred in failing to grant additional funding defaulted because Martinez had not memorialized the request in

writing. *See id.* at 31-32. The Magistrate then found Martinez' failure to memorialize the request for additional funding and resulting prejudice was unreasonable under *Strickland* and *Hinton v. Alabama*, 571 U.S. 263 (2014) in section A.3. *See id.* at 31-42. The Director will address his objections to section A.1. and A.2. separately. Since the Magistrate relies extensively on *Hinton*, the Director will cite to it throughout the brief.

### 1.    The CCA's "factual findings" Were Not an Unreasonable Determination of the Facts in Light of the Record in State Court.

Initially, the Director objects to any reference to any letter authored by Jon Wisser, the trial court judge. The Magistrate opens the R&R with a reference to a letter written by Judge Wisser that is not part of the record. *See* R& R 1. The letter was dated August 28, 2012 and addressed to the Travis County District Attorney. *See* ECF No. 25-9 at 333-334. That letter could not have been part of the state record since it was drafted four months after the CCA's opinion. *See Ex parte Jimenez*, 364 S.W.3d 866 (Tex. Crim. App. Apr. 25, 2012). There was another letter in the record, dated March 30, 2011, in which Judge Wisser discussed his approach to granting motions for funding for additional experts. *See* ECF No. 25-9 at 331-332. The CCA specifically said that it did not consider this letter. *See Ex parte Jimenez*, 364 S.W.3d at 879 n.40.

The Director specifically objects to the conclusion that the CCA's "factual findings" were unreasonable in light of the facts in state court. The Magistrate found that the CCA's decision was unreasonable in light of the facts adduced in state court. *See* R&R 23, 31 (citing *Fields*, 588 F.3d at 273 (citing 28 U.S.C. § 2254(d)(2) (West 2018)). By finding that the "factual findings" were unreasonable in light of the fact adduced in state court, the Magistrate has merged "'the independent requirements of §§2254(d)(2) and (e)(1).'" *See Field*, 588 F.3d at 278-279 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)). The "factual findings" language can be found in section (e)(1) while the "unreasonable determination" language is in (d)(2). *Compare* 28 U.S.C. § 2254(d)(2) *with id.* § 2254(e)(1). The merger problem is apparent in that it appears as if the Magistrate is using this section of the argument, A.1, as grounds for disregarding the factual findings all together without having applied the-clear-and-convincing-evidence standard set out in § 2254(e)(1). *See* R&R 23-31. The Magistrate is co-mingling the evidentiary standards including citing to cases that do not apply. *Kimmelman* is a pre-AEDPA case and should not be cited for the proposition that a federal court can disregard a state court's factual findings. *See* 477 U.S. at 390 (opining on the "'merits of the factual dispute'" under § 2254(d)(1)). *Draughon* does not discuss issues related to the interplay between § 2254(d)(2) and (e)(1). *See Draughon,* 427 F.3d at 296-297. It is important to note that a factual finding may be rebutted without affecting

the ultimate decision. *See Fields*, 588 F.3d at 279 (citing *Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001)). The entire analysis under section A.1. merges the two separate, fact-related analyses. Jimenez bears the burden of rebutting the factual findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). She has a separate burden in showing that the CCA's ultimate decision finding Martinez not ineffective under *Strickland* "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See id.* § 2254(d)(2). There is also a presumption of correctness under *Strickland*, which is given double deference. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Director objects to the findings that the CCA's factual findings or determinations were unreasonable. The Magistrate seems to find the absence of any "direct evidence" as evidence that there was no evidence that Jimenez committed the offenses. *See* R&R 24. The Magistrate does not set out the entire factual record and appears to limit the "factual background" to a few paragraphs. *See* R&R 3-4. The CCA set out the facts in full detail in its opinion, which the Director recited in her Answer and which are set out in the CCA's opinion. *See* Answer 5-15 & n.6 (quoting *Ex parte Jimenez*, 364 S.W.3d 866, 870-876 (Tex. Crim. App. 2012)); ECF No. 32; *see also Jimenez v. State*, 240 S.W.2d 384, 388-394 (Tex. App. – Austin 2007, pet. ref'd). Jimenez' expert

testimony must be examined alongside the evidence the State produced at trial.

The Magistrate also believes that the same conclusions drawn by different experts would have had a different effect on the outcome of trial. *See id.* at 24-30. The Director objects to the conclusion that "[a]ll the other evidence the prosecution pointed to . . . was not even close to enough evidence to allow a jury to find Jimenez guilty." *See* R&R 24. The Director would direct the Court to possibly the most powerful evidence: the photographs showing the paper towels and B.G. *See* ECF No. 24-12 at 66-83 (paper towels); ECF No. 24-13 at 1-7 (paper towels), 8-25 (B.G.). Because this is a case involving children, the jury, even after hearing the best pediatric forensic experts telling them that it was "possible" that B.G. could have accidentally swallowed the paper towels on his own, would have had to have reconciled that testimony with the photographs. Forensic pathology "'is a discipline where common sense meets science.'" *See Jimenez*, 364 S.W.3d at 884-885 (quoting Dr. Peacock). It is difficult to imagine any reasonable juror believing any expert who might say that B.G. could have swallowed those paper towels depicted in the photographs accidentally. Boulet testified that the paper towels were a "pretty big sized clump of paper," nearly the size of a fist. *See* ECF No. 24-3 at 428-429, 502. It was so large that it was difficult to pull out of B.G.'s mouth. *See id.* at 428-429; *see also id.* at 428 ("It was so large in size that as Rob was pulling out the mass

6

with the Magill forceps, we had to hold the patient's head back down to the ground because as he was trying to pull it past the teeth, it was picking the child's head up off the ground."). In the end, this case was about common sense not forensics. The photographic evidence puts the experts' testimony in new light and confirms the declarations made by the State's medical experts that the choking was not accidental.

Additionally, Jimenez' statements were not just "minor discrepancies." *See* R&R 24 (citing to the "minor discrepancies" in Jimenez' testimony). She told Irene Vera that Bryan had been playing in the room with toys, and that he came walking of the room toward her choking, limp, and that he then fell. *See* ECF No. 24-3 at 345-347. Jimenez, though, told Officer Torres that the children were playing in another room while she was cooking in the kitchen, that she called out to Bryan several times to bring her the roll of paper towels but that she got no response. *See id.* at 142, 160. She went looking for him and found him lying unconscious. *See id.* at 161. Jimenez also came close to confessing to the crime. Officer De Los Santos testified that Jimenez approached him and asked to speak with him. *See* ECF No. 24-4 at 149; *see also* ECF No. 24-16 at 188-196 (SX 101 – transcription). She asked, "If I were to tell you that I did it, what would happen?" *See id.* She would tell him what happened if she were able to see her daughter first. *See id.* at 145. After she

saw her daughter, she said that she could not tell him what happened. *See* ECF No. 24-5 at 9.

In one of the few times the Director can see the application of the clear and convincing standard, the Magistrate opined that the CCA's determination that Dr. Kanfer and the new experts "reached *exactly the same ultimate opinion . . . and for almost precisely the same reasons*" was rebutted by the record. *See* R&R 25 (quoting *Ex parte Jimenez*, 364 S.W.3d at 888 (emphasis added)). But the Magistrate does not rebut the finding with the record but makes a qualitative assessment after finding that Dr. Kanfer and Jimenez' experts did, in fact, come to the same conclusion: "although the habeas experts reached the same 'ultimate' conclusions – that B.G.'s choking was an accident – that alone does not create an equivalence of reasoning or persuasiveness." *See* R&R 25. If the experts came to the same conclusions, then Jimenez did not carry her burden by clear and convincing evidence. The Magistrate also concludes that Dr. Kanfer was not an expert or was "unqualified." *See id.* The level of expertise is not relevant. The Court in *Hinton* said: "We wish to be clear that the inadequate assistance of counsel we find in this case does not consist of hiring of an expert who, though qualified, was not qualified enough." *See* 571 U.S. at 274-275. The CCA found Dr. Kanfer qualified and so did the trial court judge. *See Ex parte Jimenez*, 364 S.W.3d at 884-885. Section 2254(d)(2) concerns "'basic, primary, or historical facts.'" *See Ouber v. Guarino*, 293 F.3d

19, 27 (1st Cir. 2002) (quoting *Sann v. Dipaolo*, 265 F.3d 1, 7 (1st Cir. 2001)). "Inferences, characterizations of the facts, and mixed fact/law conclusions are more appropriately analyzed under the 'unreasonable application' prong of section 2254(d)(1)." *See id*. Section 2254(d)(2) seems to particularly ill-suited for a *Strickland* analysis in this case because the focus is never entirely on historical facts. Weighing the testimony of Jimenez' experts against Dr. Kanfer's testimony and the testimony of the state's witnesses and experts and making a determination that outcome of the trial would have been different, for example, is conjecture not fact. *See* R&R 25-26. As the Magistrate indicated, Dr. Kanfer and Jimenez' experts came to the *same factual conclusion*, namely, that B.G. could have accidentally choked on the wad of paper towels. *See* R&R 27-28 (emphasis added). Their "superior experience and qualifications" and full review of the record does not change the fact that Dr. Kanfer and Jimenez's experts agreed; those factors go to the weight of their testimony.

Moreover, the Magistrate erroneously believes that Jimenez' experts would have offered new testimony. *See* R&R 28-29. Drs. McCloskey and Zur would have testified that had Jimenez forced the paper towels into B.G.'s mouth, then both Jimenez and B.G. would have had injuries. *See id*. at 28-29. Dr. Kanfer made those same observations. He testified that he believed that if Jimenez had forced the paper towels down B.G.'s throat that there would have

been exterior wounds and wounds to her hand. *See Jimenez v. State*, 240 S.W.3d 384, 394 (Tex. App. – Austin 2007, pet. ref'd). Jimenez did, in fact, have injuries on her hand. *See id.* at 393. So, there really is no factual disparity between Dr. Kanfer's conclusions and the conclusions by Jimenez' experts. The argument is that her new experts would have been more convincing. That is pure speculation.

The Magistrate also seems to accumulate the testimony of Jimenez' state-habeas experts. *See* R&R at 28-29. If the trial court felt obligated to provide additional funding, then Jimenez would have gotten *one* more expert. The Supreme Court has not extended *Ake* to the provision of additional experts. *See Harris v. Thaler*, 464 Fed. App'x 301, 308 (5th Cir. 2012) (citing *Ake*, 47 U.S. at 83, *Glass v. Blackburn*, 792 F.2d 1165, 1168-69 (5th Cir. 1986), and *Graviel v. Lynaugh*, 881 F.2d 185, 192 (5th Cir. 1989) for proposition that "no federal law" requires the provision of "an additional expert"). A defendant may be entitled to "another or a different expert" if she can prove "that the original appointed expert could not adequately assist the defendant." *See Jimenez*, 364 S.W.3d at 877 (citing *Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999) (per curiam)); *id.* at 887-888 (noting that State was not constitutionally required under *Ake* to provide "an absolute (or even rough) equivalency of experts when the primary issue at trial involves the cause of death"); *id.* at 876-877 (defendant is entitled to expert assistance on critical

10

trial issues if that expert can offer appreciable help, but noting that "the State need not 'purchase for [the] indigent defendant all the assistance that his wealthier counterparts might buy.'") (quoting *Ake*, 470 U.S. 77).

In concluding that the CCA's conclusion that Jimenez was not prejudiced by Martinez' alleged errors, the Magistrate fails to acknowledge that there were plenty of state witnesses who testified that they thought the act was intentional. *See* R&R 30. The Magistrate opines about the possible outcome of the trial without weighing the testimony of all of Jimenez' experts against the testimony of the state's witnesses. The CCA believed that the testimony of the "two treating doctors," Drs. Boulet and Oehring, who testified "to the facts they observed and the care that they provided to B.G." was just as persuasive as the testimony of Jimenez' experts. *See Ex parte Jimenez*, 364 S.W.3d at 888. If the jurors had heard the testimony of one of Jimenez' experts, the probable outcome of the trial would not have been different. Therefore, the CCA's determination that Jimenez was not prejudiced by Martinez' alleged errors was not an unreasonable determination based on the facts adduced at trial.

In short, as for section 1.A., Jimenez has failed to rebut the CCA's factual findings by clear and convincing evidence and has failed to show that the CCA's ultimate determination based on the facts adduced in state court was objectively unreasonable.

2.   **Martinez Was Not Ineffective in Failing to Document a Request for Experts.**

The Magistrate said that there was "no question" that Martinez' failures to file pre-trial motions to obtain funding for the retention of experts constituted deficient performance since the CCA found that Jimenez' stand-alone, *Ake* claim was defaulted. *See* R&R 31-32. He also found that Martinez was ineffective in "failing to file proper *Ake* motions and document the trial court's ruling on those motions." *See id.* at 31-32.

First, that the CCA found the independent, *Ake* claim defaulted does not necessarily mean that it found Martinez' performance deficient in failing to file the *Ake* motion. The CCA found the claim defaulted after asking the parties to specifically address whether an *Ake* claim could be raised in a state-habeas application. *See Ex parte Jimenez*, 364 S.W.3d 866, 881-882. There was no determination that Martinez erred in failing to file a formal, written motion for additional experts under *Ake*. *See id.* at 881-882 & nn.42-54. Appellate courts will not review claims that are not preserved for review. *See* Tex. R. App. P. 33.1(a); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). Generally, when appellate courts see un-preserved error, they do not review them. Reliance on the default did not establish Martinez' deficiency.

Second, the Director specifically objects to the finding that Martinez' alleged failures to "follow the designated procedure to obtain funds for an

12

expert witness, or to preserve the rejection of such a request for appellate review, is *per se* deficient performance." *See* R&R 32 (citing to *Hinton*, 571 U.S. at 274). The Magistrate also opined that it would be *per se* deficient and prejudicial to fail to "raise a meritorious claim." *See id.*

A failure by counsel to file motions does not per se constitute ineffective assistance of counsel. *See Kimmelman*, 477 U.S. at 383-84 ("failure to file a suppression motion does not constitute per se ineffective assistance of counsel"). "[T]he filing of pre-trial motions 'falls squarely within the ambit of trial strategy.'" *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)). Such a conscious and informed decision, based on trial tactics and strategy, cannot form the basis for federal habeas corpus relief unless it is so ill-chosen that it permeates the entire trial with obvious unfairness. *See Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983); *see also Strickland*, 466 U.S. at 690-91.

If an expert "can provide assistance which is 'likely to be a significant factor' at trial," then due process may require a state to appoint an indigent defendant expert assistance. *See Jimenez*, 364 S.W.3d at 876 (quoting *Ake*, 470 U.S. at 68). A defendant, though, does not have the right to "'shop'" for an expert that will support her defense. *See id.* (quoting *Griffith v.* State, 983 S.W.2d 2828, 286 (Tex. Crim. App. 1998)). She is entitled to "expert assistance on a particular issue," who may testify or simply be "'available to consult with

counsel, to interpret records, to prepare counsel to cross-examine State's witnesses and generally to help present appellant's defense in the best light.'" *See id.* (quoting *DeFreeze v. State*, 848 S.W.2d 150, 161 n.7 (Tex. Crim. App. 1993)). She is "entitled to 'access to the raw materials integral to the building of an effective defense.'" *See Moore v. Johnson*, 225 F.3d 495, 503 (5th Cir. 2000) (quoting *Ake*, 470 U.S. at 77). A defendant may be entitled to "another or a different expert" if she can prove "that the original appointed expert could not adequately assist the defendant." *See Jimenez*, 364 S.W.3d at 877 (citing *Busby*, 990 S.W.2d at 271). Under Texas law, to obtain additional expert help and preserve the issue on appeal, counsel must identify by name of the missing expert and provide "concrete reasons" for the appointment. *See id.*, at 877-878 (citing *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985)).

The Director will address the preservation issue first. Jimenez argued that Martinez' performance was deficient in failing to preserve the *Ake* claim for appeal. *See* Fed. Pet. 60-62[1]; ECF No. 27. She was prejudiced by his failure to "preserve" her request for additional funding under *Ake* for appeal. *See id.* at 62. As the Director pointed out in her answer that "Jimenez's preservation issue is legally problematic in that in examining an attorney's performance at

---

[1] The Director will refer to Jimenez's Amended Petition, ECF No. 27, as "Fed. Pet." and refer to the page numbers assigned by the ECF system appearing along the top of each page.

trial, courts look at how that performance affected the verdict rather than the appeal. *See Strickland*, 466 U.S. at 695." *See* Answer 49. The importance of the preservation issue has nothing to do with the verdict. There has been no attempt to argue the likely outcome of an appeal. There are instances where a trial-court attorney's ineffectiveness affects an appeal but those instances apply when the appellant has lost the ability to appeal. *See id.* at 49-50 (citing *Kennedy v. Kemna*, 666 F.3d 472, 485-486 (discussing, *inter alia*, *Roe v. Flores-Ortega*, 528 U.S. 470, 483-484 (2000) and *Davis v. Sec'y of Dep't of Corrs.*, 341 F.3d 1310, 1315 (11th Cir. 2003) (per curiam)). The Director is unaware of any clearly established Supreme Court precedent that enlarges *Strickland* to instances where an attorney's error prior to or during trial also results in the waiver of appellate review. Therefore, the CCA's adjudication of the failure-to-preserve claim could never be unreasonable. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (finding that when Supreme Court has not provided clear answer to legal question, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (internal quotations omitted); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (same). And to the extent that Jimenez is relying on a new constitutional rule of procedure that is not made retroactive, the claim is barred by *Teague. See Teague v. Lane*, 489 U.S. 288, 299-311 (1989).

As for Martinez' deficiency, the Magistrate errs in asserting that the failure to file a meritorious motion is "per se" deficient and prejudicial. *See* R&R 32. The Magistrate faults Martinez for failing to properly document his requests for experts, the assumption being that had Martinez filed a properly-documented motion for additional funding to hire *one* additional expert, the motion would have been granted. *See* R&R 32. Jimenez was not entitled – and *Ake* does not require – "'multidisciplinary team'" of experts. *See Jimenez*, 364 S.W.3d at 888. As the CCA, noted that to preserve a trial court's order denying an *ex parte* request for an expert an attorney would have to show, *inter alia*, that the "'expert is not cumulative of other readily available witnesses.'" *See Jimenez*, 364 S.W.3d at 878 n.36 (quoting *State ex rel. Dressler v. Circuit Court for Racine Cty., Branch 1*, 163 Wis. 2d 622, 640, 472 N.W.2d 532, 540 (Ct. App. 1991)). When it comes to deficiency, this Court should not view Jimenez' claim retrospectively. At the time Martinez would have made the request, he could not have shown that the new expert would have added anything new. The CCA understood the interrelatedness of the various claims against Martinez. It asked the parties to address whether Martinez was ineffective in hiring Dr. Kanfer as an expert, whether Martinez was ineffective during Dr. Kanfer's cross-examination at trial, whether Martinez was ineffective in failing to hire additional experts, and whether Martinez was ineffective in failing to make an adequate written request under *Ake* for expert assistance. *See id.* at 876. The

16

CCA characterized these issues as "interrelated deficiencies." *See id* at 882. They certainly are "interrelated" because whether Martinez was deficient in failing to hire and retain additional experts and to preserve the *Ake* claim is dependent in large measure on whether he was qualified to handle this case and whether he adequately prepared to defend it. So, in response to the question of whether Martinez's performance was deficient prior to trial, the CCA made two preliminary findings: first, Martinez was qualified and, second, he adequately prepared to defend Jimenez against the State's medical evidence. *See Jimenez*, 364 S.W.3d at 883-885. Both those findings, which are unchallenged, inform the resolution of the last issue: whether Martinez was deficient in failing to file a properly-documented motion to hire *one* additional expert and whether "but for" that failure, there was a reasonable probability that the outcome would have been different. The CCA at least implicitly found that Martinez' performance was not deficient.

The Magistrate takes issue with the Director's assertion that Martinez' two affidavits were "confusing." *See id.* at 34. The Magistrate makes the mistake of focusing on the preservation issue. *See id.* The real issue must concern the failure to acquire additional expert funding to hire *one* additional expert who would have testified at trial and how the lack of that additional testimony affected the verdict. There is no doubt that Martinez satisfied his due-diligence in finding experts prior to trial. *See* Answer at 36-38

17

(documenting Martinez' pre-trial activity in finding experts); 38-41 (Martinez'

motion practice); Fed. R. Civ. P. 10(c) (incorporated by reference). The Director

was pointing out the disparity in Martinez' affidavits. *See* Answer 21-27 & nn.

7-11; Fed. R. Civ. P. 10(c). Martinez never addressed the issue of whether he

was ineffective in failing to seek additional funding for additional expert help

because he was never given an opportunity to. *See* Answer at 20-21 n.7, 26

n.11; Fed. R. Civ. P. 10(c). The state-habeas record indicates that the State

objected to the addition of the claim that Martinez was ineffective in failing to

preserve the *Ake* claim and in failing to ask for additional funding, which were

added "in an email to Judge Baird on December 31, 2010." *See* ECF No. 25-9

at 275, 327 (e-mail trail). The late addition of this claim helps explain the

inconsistencies in Martinez' affidavits. In his first affidavit, Martinez says:

> Counsel would have liked to have been able to afford Dr.
> McGeorge, experts in biomechanical engineering, human factors
> research, and child development, but the willingness of people
> contacted to take appointed cases and the fees in the tens of
> thousands of dollars were beyond our limited resources.

*See* ECF No. 25-2 at 7. There was no *Ake* claim in Jimenez' first, state-habeas

application. *See Ex parte Jimenez*, 364 S.W.3d at 879. It appeared in her

supplemental application. *See id.* Martinez then provided a second affidavit

giving a different account:

> During my pre-trial preparation, I met with Judge Wiser [sic] to
> ask for additional funds to retain experts such as Dr. McGeorge
> and a biomechanical expert. I explained to the judge why we

needed these experts, and that I did not think my current team was adequate to counter the State's case. Judge Wiser [sic] told me that he had authorized more experts than usual in a non-capital case, and that he would not pay for any more expert assistance regardless of my need. Based on the judge's ruling, I was forced to work within the constraints imposed by the Court. Ms. Jimenez was indigent, and I could not afford to hire these experts out of pocket.

*See* ECF No. 25-3 at 110. The *Strickland*-related *Ake* claim then came at the very last moment. *See* ECF No. 25-9 at 275. Jimenez confirms that the specific claim that Martinez was ineffective in failing to preserve the *Ake* error "was later developed in the habeas proceeding." *See* ECF No. 25-9 at 173.

In his first affidavit, Martinez seems to say that he did not seek additional experts or approach Judge Wisser about his circumstances because he knew that "Dr. McGeorge, experts in biomechanical engineering, human factors research, and child development" would not "take appointed cases" and because they would have been too expensive. In the second affidavit, he says he went to Judge Wisser and asked for additional funds but was turned down. It is this after-the-fact recollection on the availability of funding that is confusing. In neither affidavit did Martinez say he thought Dr. Kanfer was inadequate. This determination would have been necessary to acquire a new expert since Jimenez was not entitled to multiple experts under *Ake*. When asking for additional-expert help, Martinez would have had to have been dissatisfied with Dr. Kanfer. *See Jimenez*, 364 S.W.3d at 877. He was not.

The Director does not believe that *McWilliams v. Dunn* or *Hinton* are dispositive. *See* R&R 35-36, 38-41. The defendant in *McWilliams* was denied the right to an independent defense expert. *See McWilliams*, 137 S. Ct. 1790, 1799 (2017). Jimenez did, in fact, have her own independent expert. The Court noted that "the simplest way for a State to meet this standard [under *Ake*] may be to provide a qualified expert retained specifically for the defense team." *See id.* at 1800. Jimenez retained Dr. Kanfer. The Magistrate appears to argue that Jimenez was constructively denied an expert because he was not qualified enough. *See* R&R 24-31. That seems to be echoed in the Magistrate's criticism of the CCA's prejudice inquiry. *See* R&R 36-38. That Dr. Kanfer was not as qualified as Jimenez' state-habeas experts is not a legal disqualification. *See Hinton*, 134 S. Ct at 1089.

The CCA's opinion is not at odds with *Hinton*. Anthony Ray Hinton's attorney was found ineffective in failing to ask for "additional funding *in order to replace an expert he knew to be inadequate* because he mistakenly believed that he" was not entitled to additional funding under state law. *See* 571 U.S. at 274 (emphasis added). Martinez did not say that he knew all along that Dr. Kanfer was inadequate and needed to be replaced. It is true that Martinez said in his second affidavit that "the expert assistance I had at trial was not sufficient to adequately defend Ms. Jimenez." *See* ECF No. 25-3 at 110. He did not say he was unhappy with Dr. Kanfer. In fact, he said he felt "very lucky to

have the assistance of Dr. Kanfer, Dr. Parker, Joe Martinez, and Keith Kristelis" given the limited resources available to him. *See* ECF No. 25-2 at 7. The record firmly establishes Martinez's confidence in the team he had assembled. Courts must "'reconstruct the circumstances of counsel's challenged conduct' and 'evaluate the conduct from counsel's perspective at the time.'" *See Harrington v. Richter*, 562 U.S. 86, 89 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Second, Martinez did not make "an inexcusable mistake of law." The attorney in *Hinton* was deficient because he made an "inexcusable mistake of law" believing he was not entitled to additional funding under state law. *See Hinton*, 571 U.S. at 274. The failure to memorialize a request after being told he was not entitled to additional funding is not "an inexcusable mistake of law." The Court did not discuss *Ake* at all in *Hinton* so its applicability here is suspect. *See generally id.* at 264-276.

Third, the ballistics evidence in *Hinton* was dispositive while the medical evidence here was not. The Director disagrees with the Magistrate that the medical expertise in this case was the primary evidence of guilt. Jimenez' inconsistent statements, apparent willingness to confess, and the photographs provide evidence independent of the medical evidence. Dr. Kanfer's argument that a child could accidentally choke on a wad of paper towels was bolstered by Martinez's attack on the State's timeline, the absence of any physical injuries

21

to B.G., and the absence of Jimenez's DNA on the paper towels. *See* ECF No. 25-2 at 7-9.[2]   *Hinton* depended exclusively on just one piece of forensics, the ballistics. *See id.* at 273. And this case, unlike *Hinton*, dealt with more than just the science or forensics – it also involved "common sense." Forensic pathology, as the CCA noted quoting Dr. Peacock, "'is a discipline where common sense meets science.'" *See Jimenez*, 364 S.W.3d at 884-885.

While this case bears some similarity to *Hinton*, it is also very similar to *Richter*, a habeas case involving the use of experts. Joshua Richter and Christian Branscombe were charged with murder, attempted murder, burglary, and robbery in the killing of Patrick Klein, the assault of Joshua Johnson, and the robbery of their apartment. *See Richter*, 562 U.S. at 92-94. Branscombe was the shooter but stolen items were found at Richter's residence. *See id.* at 93. Richter argued that Branscombe had fired at and wounded Klein in self-defense and killed Johnson "in the crossfire." *See id.* at 94-95. There was blood evidence at the scene that might have supported the

---

[2] Notably, during the state-habeas proceeding one of Jimenez's new experts agreed with Martinez's strategy to focus on the absence of physical injuries and the timeline. In response to Judge Baird's question on how "good and well-intentioned persons like you and Dr. Zur and Dr. Aldridge and people on the other side" could come to "such varying views," Dr. McCloskey said his opinion that choking was accidental came down to "the absence of external marks or other internal injuries, especially in the mouth" and forty-minute timeline. *See* ECF No. 25-7 at 420-423. The question posed by Judge Baird gets at one of the problems with expert-opinion testimony, namely, who is right and who is wrong. Importantly, Dr. McCloskey said he thought the absence of physical injuries and problems with the timeline were the "tie-breakers," so to speak. Martinez clearly thought so too.

defense but Richter's attorney did not hire any experts. *See id.* at 95-96. In his state-habeas proceeding, Richter argued that his attorney was deficient in "failing to present expert testimony on serology, pathology, and blood spatter patterns." *See id.* at 96. Richter "offered three affidavits from three types of forensic experts," who all supported Richter's defense. *See id.*

The Court noted that the state courts are given "wide latitude" in applying *Strickland*. *See id.* at 106 (citing 466 U.S. at 689). The Court also made an observation that seems particularly appropriate in this case:

> From the perspective of Richter's defense counsel when he was preparing Richter's defense, there were any number of hypothetical experts – specialists in psychiatry, psychology, ballistics, fingerprints, tire treads, physiology, or numerous other disciplines and subdisciplines – whose insight might possibly have been useful. An attorney can avoid activities that appear 'distractive from more important duties.' . . . Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.

*See Richter*, 532 U.S. at 96 (citations omitted). Martinez provided his own wish list and said he would have "liked to have been able to afford Dr. McGeorge, experts in biomechanical engineering, human factors research, and child development, but the willingness of people contacted to take appointed cases and the fees in the tens of thousands of dollars were beyond our limited resources." *See* ECF No. 25-2 at 7. Martinez, of course, had two medical experts prior to trial, an arrangement that allowed him to focus on other areas of the

State's case like the timeline, the absence of physical injuries, DNA evidence, and character evidence. An early formulation of trial strategy and a decision to attack the state's expert witnesses on cross examination rather than calling additional experts can be a part of a reasonable trial strategy. *See Strickland*, 466 U.S. at 691. The introduction of expert testimony is rarely the only reasonable strategy for defense counsel, and can have the negative effects of distracting the jury from evaluating the truthfulness of the fact witnesses presented and transforming the case into a battle of the experts. *See Richter*, 562 U.S. 108-109 (noting that "expert testimony could shift attention to esoteric matters of forensic science, distract the jury from whether [defendant] was telling the truth, or transform the case into a battle of the experts").

The Court also observed that attorneys often question their own performance:

> After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.

*See id.* at 109-110. Certainly, Martinez's second affidavit recounting his performance, to the extent that it could be used as an admission that he could have done more to get additional help, and opining that he could have used the testimony of people such as Dr. Zur, Dr. McCloskey, and Dr. Ophoven, reflects

a post-hoc lament that is certainly not reflected in any of his pre-trial letters or filings. The CCA understood that Martinez had no legal obligation to assemble a "multidisciplinary team" of experts. *See Jimenez*, 364 S.W.3d at 887. The Court in *Richter* said the same thing, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *See* 562 U.S. at 111.

The CCA's ultimate determination that Jimenez was not denied effective representation was not an unreasonable determination of the facts in light of the evidence produced in state court. The R&R does not distinguish between the facts it found to be rebutted under § 2254(e)(1) and the ultimate determination under § 2254(d)(2). That a factual finding was rebutted does not necessarily establish that the ultimate decision was objectively unreasonable. *See Fields*, 588 F.3d at 279 (citing *Valdez*, 274 F.3d at 951 n.17). The Director believes that if one of Jimenez' state-habeas experts had testified instead of Dr. Kanfer, the jury would still have seen the case as a battle of experts and deferred to their own common-sense evaluation of the evidence including – and possibly especially – the photographic evidence.

Federal habeas relief is not available merely because the high standard in Section 2254(d) is met. In the event that the state-court adjudication is deemed unreasonable, the federal court must still determine whether habeas

relief is warranted. "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Therefore, in those rare cases in which a state prisoner makes the difficult showing required under Section 2254(d), the federal court must make its own independent determination of the merits of the claim and conduct the evidentiary development necessary to properly make that determination. In the event that this Court should find that Jimenez has shown that the state-court's factual findings were unreasonable under § 2254(d)(2), the Court should undertake de novo review and give Martinez the opportunity to squarely address the allegations against him subject to the restrictions of § 2254(e)(2).

## B.   The Ake Claim Was Defaulted.

The CCA found Jimenez' freestanding *Ake* claim defaulted. *See Ex parte Jimenez*, 364 S.W.3d at 880-882. The Magistrate believes that Jimenez has overcome the default by establishing Martinez' ineffectiveness. *See* R&R at 43.

The Director specifically objects to the Magistrate's failure to acknowledge that Jimenez' claim is barred by *Teague* and that there is no clearly established Supreme Court precedent extending *Ake* to the assistance of a forensic examiner nor has it extended *Ake* to the provision of additional

experts. *See* R&R 43-44. The claim is barred by *Teague* and the Supreme Court has not extended *Ake* beyond expert psychiatric testimony. *See Harris*, 464 Fed. App'x at 308 (citing *Ake*, 47 U.S. at 83, *Glass*, 792 F.2d at 1168-69, and *Graviel*, 881 F.2d at 192 for proposition that "no federal law" requires the provision of "an additional expert"); *Weeks v. Angelon*e, 176 F.3d 249, 263–66 (4th Cir. 1999) (holding that *Teague* barred due process claim that indigent defendant was entitled to experts in ballistics and pathology based on the interpretation that *Ake* and *Caldwell*[3] together stood for the proposition that, at the time the defendant's conviction became final, due process only required that an indigent defendant be appointed psychiatric experts when his sanity was at issue in the trial); *see also Covarrubias v. Biter*, No. CV 11–6213 AG (JCG), 2013 WL 5933677 at *3 (C.D. Cal. Oct. 31, 2013) ("While the Constitution requires a state to provide access to a psychiatric expert where an indigent's sanity is in question (citation omitted), this requirement has not been extended to the appointment of other experts.") (not designated for publication); *Sanchez v. Hedgpeth*, 706 F. Supp. 2d 963, 987 (C.D. Cal. 2010) (denying petitioner's claim that he was entitled to the appointment of a forensic expert on the ground "the Supreme Court has not clearly established a

---

[3] *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) ("We . . . have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to [the appointment of a criminal investigator, a fingerprint expert, or a ballistics expert].").

constitutional right to the appointment of <u>forensic</u> experts.") (emphasis added) (not designated for publication).

The Director also objects to the conclusion that Martinez was ineffective under *Strickland*; thus, Jimenez cannot get around the procedural bar. The Director also points out that it seems logically inconsistent to grant relief on both the *Strickland* claim and the *Ake* claim. If Martinez were ineffective in failing to properly request funding, then the trial court could not have erred in failing to grant a request for additional funding. And if Martinez properly made the request, he could not be ineffective. If he properly made the request, then Jimenez could not get around the default.

The Director objects to the Magistrate's finding that one of Judge Baird's factual findings survived the CCA's ultimate decision. The Magistrate argues that the finding that "Jimenez had been denied the resources needed to hire experts other than Dr. Kanfer" was not explicitly rejected by the CCA. *See* R&R 45. The Director believes that the Magistrate is referring to finding 57, which read, "Mr. Martinez recognized the need for expert witnesses including experts on choking. He sought funding for experts through informal *ex parte* meetings with Judge Wisser. However, Mr. Martinez's informal *ex parte* requests for additional experts were denied by Judge Wisser." *See* ECF No. 25-6 at 61.

The Director does not believe that finding 57 "survived review" because the only findings that the CCA appeared to agree with concern the "factual

findings concerning Drs. Zur, McCloskey, and Ophoven" and deference to the jury's verdict *See Ex parte Jimenez*, 364 S.W.3d at 874-876 nn.16-19. The CCA also noted the inconsistencies with Martinez' affidavits. *See id.* at 878-880. Finding 57 did not appear to survive the CCA's opinion. *See id.* at 879-880.[4]

Last, the Director objects to the finding that Jimenez was prejudiced by the trial court judge's alleged failure to grant additional funding. *See* R&R 47. The prejudice analysis outlined in *Kotteakos v. United States* should govern whether Jimenez was prejudiced when the trial court judge denied Martinez' request for additional funding under *Ake. See Busby v. Cockrell,* No. 5:02-CV-264, 2003 WL 24292821, at *8 (E.D. Tex. Mar. 31, 2003), *aff'd*, 73 Fed. App'x. 49 (5th Cir. 2003) (citing *White v. Johnson*, 153 F.3d 197, 202 (5th Cir. 1998)). Jimenez has failed to show that the denial of the request to acquire additional funding to hire a different expert "'had a substantial and injurious effect or influence' on the jury's verdict." *See id.* The Director again believes that the other evidence – evidence of Jimenez inconsistent testimony, near-confession and the photographic evidence – was sufficient to convince the jury that Jimenez was guilty beyond a reasonable doubt notwithstanding the doubts of a qualified expert.

---

[4] The Director also objects to the statement that the State had not contested the findings. *See* R&R 47 n.27. Jimenez did not refer to any findings in her argument on this issue. *See* Fed. Pet. at 82. She cited to a conclusion of law no. 16. *See id.* n.283.

## CONCLUSION

Jimenez failed to show that the state-courts' determination was the product of an unreasonable determination of the facts and failed to rebut the CCA's factual findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(d)(2), (e)(1). The Director respectfully requests that this Court overrule the Magistrate's recommendation and deny Jimenez' petition with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFF C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
  for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Jon R. Meador
JON R. MEADOR*
Assistant Attorney General
State Bar No. 24039051

\*Attorney in Charge

P.O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 936-1400
Facsimile No. (512) 936-1280
jon.meador@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

30

## CERTIFICATE OF SERVICE

I hereby certify I have electronically filed the foregoing with the Clerk of Court on October 8, 2018 using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Bryce Benjet
Innocence Project
40 Worth Street, Suite 701
New York, New York 10013
212-364-5980
Fax: 212-364-5341
Email: bbenjet@innocenceproject.org

Sara Ann Brown
Gardere Wynne Sewell, LLP
3000 Thanksgiving Tower
1601 Elm Street, Suite 3000
Dallas, Texas 75201
214-999-4887
Fax: 214-999-4667
Email: sabrown@gardere.com

s/ Jon R. Meador
JON R. MEADOR
Assistant Attorney General